IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DORIS HODO, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 1561 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, an Illinois | ) | |
| Municipal Corporation, | ) | |
| OFFICER M. MENDEZ, Star No. 16004, | ) | |
| OFFICER C. DE LA TORRE, | ) | |
| Star No. 5284, SERGEANT | ) | |
| KARCZEWESKI, Star No. 1155, | ) | |
| and UNKNOWN POLICE OFFICERS, | ) | Judge John Z. Lee |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Doris Hodo has sued the City of Chicago, Officer M. Mendez, Officer C. De La Torre, Sergeant Karczeweski (first name unknown), and other unnamed police officers. Hodo alleges that Defendants violated the Fourth Amendment by searching her apartment without a valid warrant (Count I), failing to knock and announce their presence (Count II), and conspiring to flout her constitutional rights (Count III). *See* 42 U.S.C. § 1983. Hodo also claims that the City maintained a custom or practice of obtaining invalid warrants, see *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978), (Count IV). The Defendants have moved to dismiss Hodo's complaint [32].[1] *See* Fed. R. Civ. P. 12(b)(6). For the reasons that follow, that motion is granted as to Count III but denied as to Counts I, II, and IV.

---

[1] Citing Federal Rule of Civil Procedure 12(c), Defendants also urge the Court to enter judgment on the pleadings in their favor. When Defendants submitted their motion,

## **Factual Background**[2]

For more than four decades, Doris Hodo has lived on the second floor of 3121 West Flournoy Street in Chicago, Illinois. Am. Compl. ¶ 3, ECF No. 31. Hodo, who was 87 at the time of the events, has never been arrested or charged with any crime. *Id.* ¶¶ 3–4.

The City of Chicago operates Gang Enforcement Task Force #311, a unit that counts Defendants Mendez, De La Torre, and Karczeweski among its members. *Id.* ¶ 27. According to Hodo, the Task Force routinely introduces testimony from unreliable John Doe informants to apply for unsubstantiated search warrants. *Id.* ¶ 28. The Task Force typically asks Judge Araujo to approve its warrant applications, Hodo adds, because the judge has a reputation for "rubber stamp[ing]" dubious submissions. *Id.* ¶ 29.

Two years ago, Mendez, De La Torre, and Karczeweski asked Judge Araujo to issue a warrant allowing them to search the person and property of Darryl K. Hill, a suspected drug dealer. *Id.* ¶ 10. At the time, Hill lived on the first floor of Hodo's apartment building. *Id.* ¶ 16. Following their usual practice, Defendants supported their warrant application with testimony from a John Doe informant. *Id.* ¶ 28.

---

however, they had not filed an answer. As a result, to the extent that they invoke Rule 12(c), their motion is premature and is therefore denied.

[2]  When reviewing a motion to dismiss, the Court assumes the alleged facts in the complaint are true and draws all reasonable inferences in favor of the Plaintiff. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Judge Araujo approved the search warrant on January 10, 2018. *See* Ex. A, Search Warrant ("Warrant") at 1, ECF No. 1-1. For reasons that remain unclear, however, the warrant did not authorize the Task Force to enter the first floor apartment at 3121 West Flournoy Street, where Hill resided. *Id*. Instead, it directed them to search the second floor, where Hodo had lived for decades. *Id*. Hodo has never kept drugs in that apartment or allowed anyone else to do so. Am. Compl. ¶ 15.

On the evening of January 11, the Defendant officers arrived at 3121 West Flournoy Street. *Id.* ¶ 16. Reaching the first floor, the officers encountered Hill, who provided proof that he lived in that unit. *Id*. Rather than stopping, the officers proceeded to the second floor apartment. *Id.* ¶ 18.

Hodo was working in her kitchen when she heard "three loud bangs." *Id.* ¶ 19. Hurrying towards the source of the noise, Hodo was startled to discover that Mendez, De La Torre, Karczeweski, and other officers had broken down her door and entered her living room. *Id.* ¶¶ 20–21. The sudden encounter with armed strangers frightened Hodo, especially because one of the officers had his hand on his gun. *Id.* ¶ 21. Convinced that this intrusion violated her Fourth Amendment rights, Hodo sued the officers and the City.

## **<u>Legal Standard</u>**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

3

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)).

At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). For that reason, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

Hodo claims that the Defendants searched her home without a valid warrant (Count I), failed to enter in a reasonable manner (Count II), conspired to invade her constitutional rights (Count III), and engaged in a widespread practice of flouting the Fourth Amendment (Count IV). The Court addresses each claim in turn.

**A.    Count I: Invalid Warrant**

Plaintiff's first claim alleges that, by entering her apartment, Defendants violated her constitutional rights. *See* 42 U.S.C. § 1983. Generally, the Fourth Amendment requires that the government obtain a warrant before conducting a search. *See City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2452 (2015). As Defendants do not invoke any exceptions to that principle, their entry into Hodo's

4

home contravened the Fourth Amendment unless it was authorized by a valid warrant.

For a warrant to be valid, two requirements must be met. First, the warrant must be supported by "probable cause to believe that contraband or evidence is located in a particular place." *Illinois v. Gates*, 462 U.S. 213, 230 (1983). As the Seventh Circuit has clarified, "when a building is divided into more than one residential unit, a distinct probable cause determination must be made for each unit." *United States v. Butler*, 71 F.3d 243, 249 (7th Cir. 1995) (citation omitted). Second, "the officers who are commanded to search [must] be able from the 'particular' description of the search warrant to identify the specific place for which there is probable cause to believe that a crime is being committed." *United States v. White*, 416 F.3d 634, 637 (7th Cir. 2005) (citation omitted).

The question here is whether there was probable cause to believe that contraband would be found in Hodo's apartment. According to Hodo, she never kept drugs in her second-floor apartment, never allowed anyone else to do so, and lived in the same apartment for 45 years. Of course, that Hodo never stored contraband in her apartment does not foreclose the possibility that Defendants had probable cause to believe she did. *See United States v. Lickers*, 928 F.3d 609, 617 (7th Cir. 2019) (warning that probable cause requires "a reasonable probability that evidence of a crime will be found" but not "absolute certainty"). It is possible, for example, that Defendants received a reliable tip or had some other basis for the warrant. At this stage, however, the Court must draw all reasonable inferences in Hodo's favor. As a

5

result, taking her allegations to be true, Hodo has plausibly alleged that Defendants' warrant was invalid and that their entry into her home was unconstitutional.

Defendants' primary reponse is that the Court should defer to Judge Araujo's decision to issue the warrant. It is true that courts usually defer to "the probable cause finding of the judge who evaluated the warrant application." *Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1057 (7th Cir. 2018). But deference is only proper when there is a "substantial basis for concluding that a search would uncover evidence of wrongdoing." *Id.* (citation and quotation marks omitted).

In approving the search warrant, Judge Araujo relied on the testimony of a John Doe informant. But the record does not show what that informant said—if anything—to connect the second-floor apartment with criminal activity. Perhaps the informant provided convincing testimony that Hill used that apartment to store drugs. Or perhaps he said nothing at all about the second-floor apartment, and the warrant's reference to that unit reflects a clerical error. Without more, the Court cannot conclude as a matter of law that Judge Araujo had "a substantial basis for concluding that a search would uncover wrongdoing." *Edwards*, 907 F.3d at 1057.

*Horne v. Wheeler*, the case on which Defendants rely, is consistent with this view. No. 03 C 7252, 2005 WL 2171151, at *3–5 (N.D. Ill. Sept. 6, 2005). In *Horne*, a police officer urged the court to enter summary judgment in his favor because probable cause supported the underlying warrant. *Id.* at *3. Granting that motion, the court reviewed detailed records concerning the confidential informant's testimony, his basis of knowledge, and his reliability. *Id.* at *5. Here, by contrast,

6

the complaint reveals only that a confidential informant made a statement, but not what that statement entailed or what it relied on. *See* Am. Compl. ¶ 14. Until the record is more developed, the Court cannot say that Defendants' warrant was supported by probable cause. Thus, the motion to dismiss Count I is denied.

### B.    Count II: Unreasonable Search

A search that is not "executed in a reasonable manner" violates the Fourth Amendment even if it is authorized by a valid warrant. *See Guzman v. City of Chicago*, No. 5 C 6617, 2008 WL 4542963, at *4 (N.D. Ill. Apr. 8, 2008) (citing *Garrison v. Maryland*, 480 U.S. 79, 84 (1987)). In Count II, Hodo maintains that even if the warrant had been valid, Defendants failed to execute it reasonably. More specifically, she accuses the officers of failing to knock and announce their presence before entering her home. *See United States v. Banks*, 540 U.S. 31, 36–37 (2003) ("[T]he common law knock-and-announce principle . . . generally requires the police to announce their intent to search before entering closed premises.")

Citing an affidavit attached to the amended complaint, Defendants make much of Hodo's statement that "[t]he officers walked through my unit quickly but did not conduct a search." Ex. A, Am. Compl. at 2, ECF No. 31. "Plaintiff's own sworn affidavit admits that no search occurred," Defendants insist, "and therefore she has plead[ed] herself out of court." Mot. Dismiss at 6. Not so. But it is well-established that "physical entry of the home" counts as a search under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 585 (1980). Accordingly, even though Defendants

7

may not have visually searched Hodo's unit, their entry into her home triggers the Fourth Amendment's protections.

As a last resort, Defendants cast Hodo's reference to "three loud bangs" as an admission that they complied with the knock-and-announce requirement. *See* Mot. Dismiss at 6 (citing Am. Compl. *Id.* ¶ 19). But this ignores the full picture. As Hodo's complaint indicate, those noises stemmed from Defendants' successful effort to "break[ ] down her door," not from an attempt to announce their presence. Am. Compl. ¶ 22. Thus, the Court declines to dismiss Count II.

**C.     Count III: Civil Conspiracy**

Next, Hodo charges Defendants with conspiring to violate the Fourth Amendment.[3] To support a § 1983 claim based on a conspiracy theory, a plaintiff must show that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of h[er] constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 552 (N.D. Ill. 2011) (citing *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007)).

---

[3] In her amended complaint, Hodo styles Count III as a 42 U.S.C. § 1985 claim. But § 1985(3), the only possibly relevant provision, applies to conspiracies to violate the Fourteenth Amendment's equal protection clause. *See, e.g. Westbrook v. Barclay Court Reporters*, 591 F. App'x 514, 515 (7th Cir. 2015) (rejecting a Section 1985(3) claim because the plaintiff "d[id] not allege any racial or class-based motive for the defendants' actions"). Because both parties construe Hodo's amended complaint as raising a civil conspiracy claim under 42 U.S.C. § 1983, the Court does also.

8

Here, Hodo has failed to plausibly allege the first requirement. Indeed, her complaint does not identify any private (*i.e.,* non-state) individuals as members of the alleged conspiracy. Rather, she identifies the City of Chicago and various named and unnamed Chicago police officers, all of whom are state actors. Thus, the Court grants the motion to dismiss as to Count III.

### D. Count IV: *Monell* Liability

Finally, Defendants contend that Hodo's allegations are insufficient to establish municipal liability under *Monell*, 436 U.S. at 694.[4] For a municipality to be liable under § 1983, "a plaintiff must show that his constitutional injury was caused by (1) the enforcement of an express policy of the [city], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467–68 (7th Cir. 2010). Hodo does not contend that her injury stemmed from the City's express policies or the decisions of a final policymaker. Instead, she says that the City's police officers engaged in a widespread practice of filing warrant applications based on unreliable testimony.

Stripped of conclusory assertions, Hodo's *Monell* claim boils down to three allegations. First, Task Force #311 frequently asked untrustworthy informants to testify at probable cause hearings. *See* Am. Compl. ¶ 28. Second, the Task Force

---

[4] To buttress her *Monell* claim, Hodo refers to a consent decree that the City of Chicago entered on January 31, 2019. *See* Am. Compl. ¶¶ 36–38 (citing *Illinois v. Chicago*, 17-cv-6260, ECF No. 703). But that consent decree states that it not be used to "support a claim of liability by or against the City . . . or any of [its] officials, officers, agents or employees." *Illinois*, 17-cv-6260 (N.D. Ill. Jan. 31, 2019), ECF No. 703 at ¶ 707.

9

"purposely requested Judge Arajuo over 80 times because he would 'rubber stamp' their warrants." *Id.* ¶ 29. Finally, because of those practices, members of the Task Force—namely, Defendants—secured an invalid warrant that directed them to enter Hodo's home. *Id.* ¶ 39.

For now, these allegations are sufficient to show that the City maintained a custom or practice that caused Hodo's injury. This is not a case where a plaintiff relies on a single "isolated incident" to support a *Monell* claim. *Coleman v. City of Chicago*, No. 13 C 6792, 2014 WL 3706584, at *3 (N.D. Ill. July 25, 2014). Rather, Hodo alleges that members of the Task Force submitted 80 other dubious warrant applications. *See* Am. Compl. ¶¶ 29, 31. That non-Defendant Task Force members lodged many of those applications does not undercut Hodo's claim. The question is whether the City had a "widespread practice" that produced constitutional violations, not whether Defendants participated in every instance of that practice. *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016).

And, contrary to Defendants' suggestion, Hodo has adequately pleaded a "direct causal link" between the City's practices and her injury. *See Mikolon v. City of Chicago*, No. 14 CV 1852, 2014 WL 7005257, at *4 (N.D. Ill. Dec. 11, 2014) (clarifying that a municipal defendant must "proximately cause[ ] plaintiffs' alleged injuries"). Taking as true Hodo's allegation that the Task Force routinely submitted unreliable testimony, Defendants should have foreseen that some of the warrants they secured as a result of that testimony would be invalid. Thus, Count IV survives dismissal at this preliminary stage.

## **Conclusion**

For the reasons stated above, Defendants' motion to dismiss [32] is granted as to Count III but denied as to Counts I, II, and IV.

**IT IS SO ORDERED.**　　　　　　　　**ENTERED 2/5/20**

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　**John Z. Lee**
　　　　　　　　　　　　　　　　　　　　**United States District Judge**