## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DORIS HODO,                              )
                                         )
            Plaintiff,                   )
                                         )     No. 19 C 1561
      v.                                 )
                                         )     Judge John Z. Lee
The CITY OF CHICAGO,                     )
OFFICER MARK MENDEZ                      )
(Star #16044), OFFICER C. DE             )
LA TORRE (Star #5284), SGT.              )
KARCZEWSKI (Star #1055), and             )
UNKNOWN POLICE OFFICERS,                 )
                                         )
            Defendants.                  )

### MEMORANDUM OPINION AND ORDER

Plaintiff Doris Hodo has lived on the second floor of 3121 West Fluornoy Street

("3121 W. Fluornoy") on the west side of Chicago for more than four decades. On the

evening of January 12, 2018, a team of Chicago Police Department ("CPD") officers

broke down Hodo's door while executing a search warrant based on an informant's

tip that her first floor neighbor was dealing drugs. Hodo sued the City of Chicago

("City") and several CPD officers (collectively "Defendants") under 42 U.S.C. § 1983

for violating her Fourth Amendment rights. Defendants moved for summary

judgment. For the following reasons, the Court grants the motion in part and denies

it in part.

## I.     Background[1]

### A.     The Investigation

CPD Officer Mark Mendez met with a confidential informant ("CI") on January 9, 2018.  Defs.' J. LR 56.1(a)(3) Statement Undisputed Material Facts Supp. Mot. Summ. J. ("DSOF") ¶ 7, ECF No. 112.  The CI told Mendez that he had purchased heroin from someone named Darryl Hill at 3121 W. Fluornoy over one hundred times in the past year.  *Id.* ¶¶ 9–12.  The most recent of these transactions occurred less than twenty-four hours before the CI's meeting with Mendez.  *Id.* ¶ 14.  Furthermore, the CI informed Mendez that, at the most recent buy, he saw Hill coming out of the second floor apartment, and he and Hill completed the transaction in the stairwell. *Id.*; *see* DSOF Ex. F, Mendez Dep. at 127:5–15, ECF No. 116-6.

To confirm the tip, Mendez drove the CI past 3121 W. Fluornoy, and the CI indicated that Hill had sold him heroin at that location.  DSOF ¶ 15.  Additionally, Mendez ran Hill's name through the CPD's database to obtain a picture of Hill.  *Id.* ¶ 16.  Mendez showed the picture to the CI, and the CI positively identified Hill as the person who sold him heroin out of 3121 W. Fluornoy.  *Id.* ¶ 17.  Finally, Mendez searched the 3121 W. Fluornoy address in the Cook County Assessor's database, which revealed that 3121 W. Fluornoy was a multifamily residence divided into at least two separate apartments.  *Id.* ¶ 19; *see* Mendez Dep. at 28:8–24; 82:21–83:6. The database did not reveal the names of the building's tenants.  *Id.* at 28:21–29:4.

---

[1]     The following facts are undisputed or deemed admitted, unless otherwise noted.

That same day, Mendez prepared two applications for search warrants for 3121 W. Fluornoy—one for the first floor and another for the second floor. DSOF ¶ 20; *see generally* DSOF Ex. A, 1st Fl. Compl. Search Warrant, ECF No. 116-1; DSOF Ex. B, 2nd Fl. Compl. Search Warrant ("Warrant Aff."), ECF No. 116-2. The applications requested authorization for CPD officers to search each floor of 3121 W. Fluornoy and to seize any heroin, items showing proof of residency, drug paraphernalia, money or records of drug transactions, and other contraband. DSOF ¶ 20. The applications noted that the CI had informed Mendez that he had purchased heroin from Hill at 3121 W. Fluornoy "over one hundred times" in the past several years and described in detail a drug transaction in the first-floor apartment. Warrant Aff. at 3. The applications also noted the CI's positive photo identification of Hill, and the CI's positive identification of 3121 W. Fluornoy. *See id.*

An assistant state's attorney approved the applications. DSOF ¶ 21. And the next day, Mendez took the CI, a copy of the CI's criminal history, and a copy of the results from Mendez's search of the Cook County Assessor's database to Cook County Circuit Judge Mauricio Araujo. *Id.* ¶ 23. After reviewing the evidence, Judge Araujo determined that there was probable cause to issue the warrants and signed both. *Id.* ¶ 27; DSOF Ex. L, Araujo Decl. ¶¶ 19–22, 24–27, ECF No. 112.

## B. Execution of the Search Warrants

About three days later, on the evening of January 12, 2018, two teams of CPD officers executed the warrants at 3121 W. Fluornoy. DSOF ¶ 33. At this point, the parties' accounts of the events diverge.

3

As Defendants tell it, the CPD teams split up immediately—one ascending to the second floor, and the other remaining on the first floor. *Id.* The first floor search team, which included Mendez and CPD Officer C. De La Torre, knocked and announced their presence, and Ivory Hill opened the door. After they entered the apartment, they encountered Darryl Hill. *Id.* ¶ 39; Mendez Dep. at 93:23–95:4. They also found numerous mail items with proof of residency for Darryl Hill. DSOF ¶ 40; DSOF Ex. E, Darryl Hill Proof of Residency ("Proof of Residency"), ECF No. 116-5. Some of the items were addressed to Darryl Hill at the first floor apartment, but others were addressed to Darryl Hill at unit "2F." *See* Proof of Residency; *see also* DSOF ¶ 42.

While the first floor team was entering the first floor unit, the second floor team, headed by CPD Sergeant Karczewski, ascended the stairs to the second floor. DSOF ¶ 44. When they arrived at the door to the second floor unit, the officers knocked and announced "Chicago Police" and "search warrant" repeatedly. *Id.* ¶ 46; DSOF Ex. K, Karczewski Decl. ¶¶ 12–13, ECF No. 116-11. After waiting a "reasonable period of time" without a response, the second floor team forced down the door. DSOF ¶ 47; DSOF Ex. O, Officer Fonseca Dep. at 23:16, ECF No. 116-15. According to Defendants, none of the officers named as defendants in this case were the ones who breached the door. DSOF ¶ 48.

Unbeknownst to the officers, Hodo lived in the second floor apartment, and by the time Hodo reached her front door, the officers had already entered the apartment, at which time Karczewski handed Hodo a copy of the search warrant. *Id.* ¶ 60. The

4

second floor team then conducted a "brief" walk-through of the second floor unit for security purposes and took photographs. *Id.* ¶¶ 61, 66.

Hodo's version of the events differs in several respects. According to her account, the CPD teams searched her apartment after searching the first floor unit. Pl.'s LR 56.1(b)(3) Resp. Defs.' J. LR 56.1(a)(3) Statement Supp. Mot. Summ. J. ("Pl.'s Resp. DSOF") ¶ 37, ECF No. 118. After the officers encountered Ivory and Darryl Hill in the first floor unit, searched the unit, and confirmed that Darryl Hill lived there, they asked Ivory Hill to let them in the door to the stairs leading to the second floor unit. *Id.* ¶ 33.

Once they arrived at the door to Hodo's apartment, rather than knocking or announcing their presence, the officers simply "banged" on the door "two to three times in quick succession" and broke it open using a sledgehammer or something heavy. Pl.'s Statement Undisputed Material Facts Pursuant LR 56.1 ("PSOAF") ¶ 14, ECF No. 118. Officer "Martinez" (whom Hodo believed at the time to be Mendez) was part of the team that broke into her apartment, and it was Mendez, not Karczewski, who handed Hodo a copy of the warrant. Pl.'s Resp DSOF ¶ 38. Finally, Hodo recalls that the walk-through of her apartment lasted between five and ten minutes and that the named defendants were present in her apartment for about twenty minutes. PSOAF ¶¶ 16–17.

Hodo filed this action against the City, Mendez, De La Torre, Karczewski, and several unnamed CPD officers,[2] bringing § 1983 claims based on the Fourth

---

[2]    Hodo's failure to name the "unknown officers" by this point—far after the two year statute of limitations period for § 1983 claims has expired—forfeits any claims against them,

5

Amendment for searching her apartment pursuant to an invalid warrant and failing to knock and announce their presence. She also asserted claims of conspiracy to violate her Fourth Amendment rights as well as a claim under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), alleging that the CPD maintained an unlawful policy or custom of obtaining invalid warrants.

The Court previously dismissed the conspiracy claim, but denied Defendants' motion to dismiss the other claims. *See Hodo v. City of Chi.*, No. 19 C 1561, 2020 WL 564224, at *5 (N.D. Ill. Feb. 5, 2020). The Court then granted Defendants' motion to bifurcate the claims against the individual Defendants from the *Monell* claim and to stay *Monell* discovery. *See* Order, *Hodo*, No. 19 C 1561 (N.D. Ill. May 18, 2021) ("5/18/21 Order"), ECF No. 110. Defendants now seek summary judgment on the remaining three claims. *See* ECF No. 111.

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence considered for summary judgment "must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Malin v. Hospira, Inc.*, 762 F.3d 552, 554–55 (7th Cir. 2014). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and

---

and those claims are dismissed. *See Herrera v. Cleveland*, 8 F.4th 493, 499 (7th Cir. 2021) (dismissing claims against "John Doe" officers because relation back of an amended complaint is inappropriate under such circumstances).

reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "come forward with specific facts showing that there is a genuine issue for trial." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019) (quoting *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015)).

To satisfy that ultimate burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

## III.   Analysis

### A.   Validity of the Warrants

Hodo first claims that Defendants violated her constitutional rights by searching her home pursuant to an invalid warrant.  Generally speaking, the Fourth Amendment requires the government to obtain a valid warrant prior to searching a home.  *City of L.A. v. Patel*, 576 U.S. 409, 419–20 (2015).  A valid warrant must describe "the place to be searched, and the persons or things to be seized," U.S. CONST. amend. IV, with particularity, meaning that it must identify the location of the search and describe the type of evidence alleged to be found there.  *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004).

A warrant also must be supported by probable cause.  *See Kentucky v. King*, 563 U.S. 452, 459 (2011).  "Probable cause exists when, considering the totality of the circumstances, there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v. Orr*, 969 F.3d 732, 736 (7th Cir. 2020) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  The Court "affords great deference to the probable cause finding made by the judge who evaluated the warrant application in the first instance," and it will uphold that determination as long as it is supported by a "substantial basis."  *Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1057 (7th Cir. 2018) (quoting *Gates*, 462 U.S. at 236).  Furthermore, in evaluating probable cause, courts "look only at what the officer knew at the time he sought the warrant, not at how things turned out in hindsight."  *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003).

Hodo argues that the warrant is unsupported by probable cause. Here, the judge's probable cause determination relies on Mendez's warrant affidavit, which in turn rests on the information Mendez had obtained from the CI. When a warrant affidavit relies on information from an informant, the Seventh Circuit weighs: (1) the level of detail in the affidavit; (2) the extent of the informant's firsthand observation; (3) the degree of corroboration; (4) the time between the events reported and the warrant application; and (5) whether the informant appeared before the judge. *United States v. Glover*, 907 F.3d 1052, 1057 (7th Cir. 2014).

Under the *Glover* test, the judge's probable cause determination here had a substantial factual basis. Mendez's affidavit is replete with detail supplied by the CI about Hill's heroin operation, noting that Hill conducts business in the stairwell of 3121 W. Fluornoy, that he runs a "twenty-four hour" business, that he sells high-quality heroin, and that he does not turn anyone away unless he does not know the customer. Warrant Aff. at 3. The time-interval and firsthand knowledge factors also weigh heavily in favor of reliability. The CI stated that he had purchased heroin from Hill at 3121 W. Fluornoy more than 100 times—including less than twenty-four hours before he spoke to Mendez. Additionally, the CI's statements about his past dealings with Hill were corroborated by his ability to identify Hill from photographs and point out the location of 3121 W. Fluornoy. Mendez's independent search of the Cook County Assessor's database also supported the CI's account.[3] What is more, the CI

---

[3]    Hodo argues that all of the information in the warrant affidavit is inadmissible at summary judgment because it is hearsay. But the information the CI told Mendez is not being introduced for its truth. Rather, it is being introduced to establish the information that Mendez had presented to the judge when seeking the search warrants and what the judge

appeared in person before the judge, allowing him to evaluate the CI's credibility. Thus, all five *Glover* factors support the judge's finding of probable cause.

Hodo advances several arguments against the warrant affidavit's reliability, but none succeed. First, she says the affidavit is facially deficient because it does not say anything about the CI's reputation for providing credible information. Hodo is correct that information about an informant's credibility is important, but "[w]here information about credibility is not available, other factors such as extensive corroboration may overcome the doubt inherent in relying on an informant without a track record." *Glover*, 755 F.3d at 818. Here, the affidavit's silence on the CI's past record of reliability is far less damaging given that Mendez had confirmed the CI's tip by asking him to identify 3121 W. Fluornoy and Hill and took the CI before the judge. As the Seventh Circuit concluded when faced with similar facts, these additional layers of corroboration, when viewed alongside the other factors, are enough to support a probable cause determination even without information about the CI's track record. *See Edwards*, 907 F.3d at 1058 (holding that, despite a warrant affidavit's lack of information supporting a CI's reliability, the police's efforts to corroborate the CI's testimony, the CI's firsthand observations, and his appearance before the magistrate collectively sufficed to establish probable cause).

Second, Hodo maintains that the CI did not provide sufficient detail to support probable cause to search the *second* floor. But it bears repeating that probable cause is judged based on the facts available to law enforcement at the time the warrant

---

reviewed in making his determination.

issued. *See Florida v. Harris*, 568 U.S. 237, 249 (2013); *Beauchamp*, 320 F.3d at 743. On the record before the Court, Mendez had enough reason to believe evidence of Hill's drug operation might be found on the second floor. The informant never specified in which apartment Hill lived and mentioned only that he "observed Darryl Hill exit the second floor apartment and met Darryl Hill in the hallway" where the transaction occurred. DSOF Ex. G, Mendez Decl. ¶ 9; *see* Warrant Aff. at 3.[4] The facts available to Mendez at the time he sought the warrant justify his belief that there was a "fair probability that contraband or evidence" from Hill's drug-selling enterprise would be found on the second floor of 3121 W. Fluornoy. *Gates*, 462 U.S. at 238.

Hodo last argues that the CI's testimony should be wholly discredited because the CI was a drug user. This is a curious argument, given that people who are not drug users are unlikely to frequent drug houses with enough regularity to acquire information useful to the authorities. As the Seventh Circuit has noted, the use of informants is integral to modern criminal investigations, *see United States v. Bailey*, 510 F.3d 726, 734 (7th Cir. 2007), and "it is unrealistic . . . to expect [informants] . . . to possess the credibility of people of the cloth." *United States v. Taylor*, 72 F.3d

---

[4]     Hodo again argues that Mendez's statement that the CI told him that he saw Hill leave the second floor apartment is inadmissible because it is hearsay. But once more, Hodo is incorrect because the statement is not being offered for its truth (*i.e.*, to prove that Hill actually emerged from the second floor apartment). Rather, it is being offered to establish that Mendez believed that Hill had exited from inside the second floor apartment, in order to show that he had probable cause to seek the warrant for the second floor. *See United States v. Leonard-Allen*, 739 F.3d 948, 954 (7th Cir. 2013) ("A witness's statement is not hearsay if the witness is reporting what he heard someone else tell him for the purpose of explaining what the witness was thinking." (emphasis omitted)).

533, 544 (7th Cir. 1995) (internal quotation marks omitted) (second alteration in original) (quoting *Rodriguez v. Peters*, 63 F.3d 546, 563 n.14 (7th Cir. 1995)).  In light of these realities, Hodo's contention that the CI's drug use made Defendants' reliance on him categorically unreasonable is unconvincing.

On a related note, Hodo claims that the CI was "almost certainly high" at the time he told Mendez about his drug transaction at 3121 W. Fluornoy.  Pl.'s Resp. Defs.' Mem. Supp. Mot. Summ. J. ("Pl.'s Resp.") at 6, ECF No. 117.  But Hodo offers no "specific facts" supporting this claim other than the allegation that the CI bought heroin from Hill more than 100 times in the past year.  *Spierer*, 798 F.3d at 507.  Hodo apparently asks the Court to infer, from the fact that the CI was a "regular" buyer from Hill, that the CI was high at the very moment he gave Mendez the information. This inference is too speculative to create a genuine issue of fact as to probable cause. *See Weaver v. Champion Petfoods, Inc.*, 3 F.4th 927, 934 (7th Cir. 2021).  This is especially so because Mendez corroborated the CI's tip and took the CI to appear before the judge, two steps that undercut Hodo's argument that the CI's information was the product of a drug-washed imagination.  *See Jones v. City of Chi.*, No. 14 C 4023, 2016 WL 1730647, at *3–4 (N.D. Ill. May 2, 2016) (St. Eve, J.) (informant's tip was reliable in light of photo identification and appearance before magistrate, even though informant bought drugs from plaintiff's address "on a daily basis for a month," *id.* at *3).

12

Because the undisputed facts show that the CI's information was reliable and the warrant was supported by probable cause, the Court grants Defendants summary judgment as to Count I.

## B.    Unreasonable Search

Hodo next claims that Defendants violated her Fourth Amendment rights by unreasonably executing the search. A search that is authorized by a valid warrant may still violate the Fourth Amendment if it is not executed in a reasonable manner. *Guzman v. City of Chi*, 565 F.3d 393, 397 (7th Cir. 2009) (citing *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). The Fourth Amendment thus requires officers to call off a search if they determine that the warrant "plainly [does] not describe the location to be searched." *Edwards*, 907 F.3d at 1059. It also ordinarily requires officers to knock and announce their presence when executing a search warrant for a home. *See Hudson v. Michigan*, 547 U.S. 586, 589 (2006).

Hodo argues that the CPD teams unlawfully proceeded with the search of her apartment even after they realized that Darryl Hill lived on the first floor. She also contends that Defendants violated the Fourth Amendment because they failed to knock and announce their presence before forcing entry into her apartment. The Court addresses each argument in turn.[5]

---

[5]      A preliminary point bears mentioning. Defendants make much of the fact that Hodo "admits" that the CPD officers did not conduct a search because she says they merely "walked through" her apartment for "officer safety reasons." Defs.' Mem. at 7–8. But Hodo's personal opinion about whether a search occurred matters little because the Fourth Amendment asks whether the individual had a reasonable expectation of privacy in the place being searched, not whether the individual uses the term "search" to describe the police conduct after the fact. *See United States v. Tuggle*, 4 F.4th 505, 510 (7th Cir. 2021) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967)). What is more, it is undisputed that the officers remained

13

### 1. Failure to Abandon the Search

According to Hodo, Defendants no longer had probable cause to search her apartment, once they determined that Hill lived on the first floor. Hodo is incorrect for two reasons. First, the search of the second floor was expressly authorized by the warrant, so the CPD teams had probable cause to search it even after they found out that Hill lived on the first floor. Indeed, the fact that Hill lived in, and operated a prolific drug enterprise on, the first floor hardly made it improbable that the second floor also contained evidence of drug dealing. This is not the sort of scenario that requires officers to abandon a search for lack of probable cause. *See Edwards*, 907 F.3d at 1059 ("[O]ur caselaw requiring officers to abandon a search addresses scenarios in which the warrant plainly did not describe the location to be searched, such as where, for example, the warrant described a single-family home and the officers arrived to find a multi-unit building." (citing *Guzman*, 565 F.3d at 397–98)).

Second, contrary to Hodo's assertions, Defendants did uncover evidence during the first floor search that supported probable cause to search the second floor. The first floor search team found proof of residence addressed to Hill at "3121 W. Fluornoy St. #2F." Proof of Residency; DSOF ¶ 42. Discovering that Hill received mail at the second floor address naturally would have led Defendants to believe that there was

---

in Hodo's apartment for around twenty minutes. This intrusion far exceeds the limits of a "protective sweep," which "lasts no longer than is necessary to dispel the reasonable suspicion of danger." *Maryland v. Buie*, 494 U.S. 325, 335–36 (1990); *see United States v. Hernandez-Mieses*, 931 F.3d 134, 142 (1st Cir. 2019) (collecting cases holding that sweeps typically last only a few minutes). On these facts, the Court concludes that Defendants "searched" Hodo's apartment for purposes of the Fourth Amendment.

"a fair probability that contraband or evidence of" Hill's drug dealing operation would be found in Hodo's apartment. *Gates*, 462 U.S. at 238.

### 2. Knock and Announce

Hodo also contends that the execution of the search violated her Fourth Amendment rights because Defendants failed to knock and announce their presence before forcing entry into her home. The knock and announce rule "requires a law enforcement officer 'to announce his presence and authority' before opening the doors of a dwelling and entering," *Leaf v. Shelnutt*, 400 F.3d 1070, 1082 (7th Cir. 2005) (quoting *Wilson v. Arkansas*, 514 U.S. 927, 929 (1995)), and "wait a reasonable amount of time before entering." *Id.* at 1082 n.12. This rule applies to all entries of a home, with or without a warrant, but is subject to several exceptions. *See Hudson*, 547 U.S. at 589–90. These exceptions include situations where the "circumstances presen[t] a threat of physical violence" or a "reason to believe that evidence would likely be destroyed if advance notice were given," *Wilson*, 514 U.S. at 936, or when knocking and announcing would be "futile." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). For a "no-knock" entry to comply with the Fourth Amendment, police need only have a "reasonable suspicion" that the circumstances fall under one of these exceptions. *Id.*

### i. Existence of a Factual Dispute

According to Defendants, it is undisputed that the CPD officers knocked and announced their presence before entering Hodo's apartment. Indeed, multiple officers testified that they knocked and announced before breaking open Hodo's door.

15

*See* DSOF Ex. J, Karczewski Dep. at 58:6-10, ECF No. 116-10; DSOF Ex. S, Fonseca Decl. ¶¶ 4–6, ECF No. 116-19; DSOF Ex. T, Philips Decl. ¶¶ 4–6, ECF No. 116-20. But Hodo contests this assertion, claiming that she did not hear anything other than two or three loud bangs and that the officers were inside her apartment by the time she got to her door about a minute after the bangs started. DSOF Ex. M, Hodo Dep. at 31:4–32:23, ECF No. 116-13.

Granting Hodo the benefit of all reasonable factual inferences, the Court concludes that her testimony is sufficient to create a genuine factual dispute as to whether the CPD officers knocked and announced their presence. Under Hodo's version of events, the CPD officers did not announce themselves at all before entering Hodo's apartment. And Defendants do not argue or offer any evidence that the CPD officers reasonably suspected a threat of physical danger or destruction of evidence, or that knocking and announcing would have been futile.

To be sure, a reasonable jury could conclude that Hodo, who had the kitchen sink running to wash dishes, simply did not hear the CPD officers' announcements. But a jury also could believe that Hodo did not hear the officers' voices because they did not actually knock and announce. Furthermore, a reasonable jury could credit Hodo's and Ivory Hill's claim that one of the officers had used a sledgehammer or similar object to break down the door and, thus, could find that the "bangs" were not knocks on the door, but sounds of the officers breaking it down. *See* Hodo Dep. at 32:13-15; 38:15–39:2; DSOF Ex. Q., Ivory Hill Dep. at 79:18–80:3; 88:13–89:2, ECF No. 116-17. Resolving such "swearing contests" is the jury's task. *Gupta v. Melloh*,

16

19 F.4th 990, 996 (7th Cir. 2021). Hodo has shown a factual dispute for trial on this issue.

### ii. Personal Involvement

Defendants also assert that summary judgment is warranted because none of the individual officer Defendants were personally involved in the purported no-knock entry, as liability under § 1983 requires. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). But the parties agree that Karczewski was a member of the second floor search team and supervised both search teams—a job that included making the entry plans. *See* DSOF ¶ 46; Karczewski Dep. at 55:3-15. This is enough to satisfy the personal involvement element. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (a supervisor is liable if they "know about the [unconstitutional] conduct and facilitate it, approve it, [or] condone it" (quoting *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012)).

As for Mendez, Hodo recounts that the first person she encountered when she arrived at the door was an "Officer Martinez." A reasonable jury could infer that Hodo misread the name on the officer's uniform to read "Martinez" when it was actually "Mendez," especially since Mendez was indisputably in the building at the time and was part of the team that searched Hodo's unit following the entry. True, Hodo suggested at times during her deposition that the officer she identified as "Martinez" was actually Karczewski. But that potential infirmity in Hodo's testimony is for the jury to weigh. *See Gupta*, 19 F.4th at 996 ("These credibility

disputes are for fact finders to resolve."); *see also Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014).

Things are different for De La Torre. Hodo produces no facts to suggest that De La Torre was involved in the purported no-knock entry. Indeed, she does not even contest Defendants' assertion that De La Torre was not part of the second floor entry team. *See, e.g.*, Pl.'s Resp. DSOF ¶ 65. As such, summary judgment on Count II is warranted as to De La Torre.

### iii. Qualified Immunity

Finally, Defendants invoke qualified immunity, which "shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Tahlequah v. Bond*, ___ U.S. ___, 142 S. Ct. 9, 11 (2021) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)).

Qualified immunity is an affirmative defense. *See Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021). Once a government officer invokes qualified immunity, the plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (quoting *Kemp v. Liebel*, 877 F.3d 346, 350–51 (7th Cir. 2017)). The "clearly established" prong requires the plaintiff to show that "the right's contours [were] sufficiently clear that every reasonable official would have understood that what he is doing violates that right . . . ." *Id.* (quoting *Kemp*, 877 F.3d at 351). Typically, the plaintiff must "present case law that has [both]

18

articulated the right at issue and applied it to a factual circumstance similar to the one at hand," *Ault v. Speicher*, 634 F.3d 942, 946 (7th Cir. 2011), but a closely analogous case is unnecessary in "an obvious case that presents a flagrant [constitutional] violation." *Gustafson v. Adkins*, 803 F.3d 883, 892 (7th Cir. 2015).

Here, Defendants never substantively raised qualified immunity as an affirmative defense regarding Hodo's claim that the officers failed to knock and announce their presence. The only time Defendants even arguably invoke qualified immunity for their execution of the warrant is a blanket statement that they are entitled to qualified immunity "on all counts" because they acted pursuant to a facially valid warrant. Defs.' J. Mem. Supp. Mot. Summ. J. ("Defs.' Mem.") at 13, ECF No. 112; *see id.* at 12–14.

This passing reference does not entitle Defendants to qualified immunity for two reasons. First, their perfunctory assertion does not meet the Seventh Circuit's pleading standard for affirmative defenses. In this circuit, affirmative defenses "require[] more detailed pleading," namely, that Defendants "allege the necessary elements of the defense[]." *U.S. ex rel Patzer v. Sikorsky Aircraft Corp.*, 382 F. Supp. 3d 860, 868 (E.D. Wis. 2019) (quoting *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294–95 (7th Cir. 1989)); *see Sarkis' Café, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1040 (N.D. Ill. 2014) (holding that *Twombly/Iqbal* standard applies to affirmative defenses). Qualified immunity is a claim-specific defense, so in order to give Hodo adequate notice, Defendants were required to at least mention, even if briefly, why they are entitled to qualified immunity for their

purported failure to knock and announce. *See Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 913 (7th Cir. 2011) (holding that defendants' three-paragraph discussion of qualified immunity in their opening brief provided sufficient notice and distinguishing it from cases where qualified immunity was discussed in a footnote or only one sentence); *Citizens Against Ruining the Env't v. E.P.A.*, 535 F.3d 670, 675 (7th Cir. 2008) (one sentence insufficient to raise issue in opening brief); *see also, e.g.*, *Thorncreek Apartments III, LLC v. Vill of Park Forest*, 970 F. Supp. 2d 828, 851 (N.D. Ill. 2013) (defendants' qualified immunity argument waived on summary judgment when it consisted of only two conclusory sentences); *Goodman v. Clark*, No. 2:09 CV 355, 2017 WL 4340201, at *6–7 (N.D. Ind. Sept. 29, 2017) (defendants failed to properly raise qualified immunity on summary judgment where "they wr[o]te at length about qualified immunity regarding their excessive force claims, [but] they never once mention[ed] qualified immunity in relation to their false arrest/seizure claim").

Second, the argument that the valid warrant entitles Defendants to qualified immunity on the knock and announce claim is incorrect. The Fourth Amendment requires law enforcement to knock and announce their presence before *any* entry of a home (subject to exceptions listed above), whether or not the entry is authorized by a valid warrant. *See United States v. Banks*, 540 U.S. 31, 36 (2003); *Guzman*, 565 F.3d at 397; *Jones v. Wilhelm*, 425 F.3d 455, 467 (7th Cir. 2005) ("[T]he Fourth Amendment's proscription of unreasonable searches and seizures incorporated the requirement that law enforcement officers entering a dwelling *with a search warrant*

must knock on the door and announce their identity and intention before attempting forcible entry." (emphasis added) (quoting *United States v. Espinoza*, 256 F.3d 718, 723 (7th Cir. 2001)). In order to validly raise qualified immunity, Defendants must make a plausible case that they are entitled to it. *See Heller Fin.*, 882 F.2d at 1295; *Thorncreek Apartments*, 970 F. Supp. 2d at 851. Merely pointing to the warrant is not enough.

That said, even if the Court were to reach the merits of Defendants' qualified immunity argument, Defendants still would not prevail on summary judgment. As discussed above, Hodo has shown the existence of a genuine factual dispute as to whether Defendants failed to knock and announce before entering her apartment. Given that there can be no dispute that the right to have officers knock and announce their presence before forcing entry to execute a search warrant was clearly established as of January 2018, *see, e.g.*, *Banks*, 540 U.S. at 36; *Jones*, 425 F.3d at 467, this factual dispute precludes summary judgment on qualified immunity grounds.[6]

For the reasons stated above, Defendants' motion for summary judgment on Count II is denied as to Mendez and Karczewski, but granted as to De La Torre.

---

[6]     Defendants urge that Hodo has forfeited any opposition to qualified immunity because she failed to rebut Defendants' qualified immunity argument in her response. But as noted above, Defendants failed to adequately plead or argue their qualified immunity defense as to the knock and announce claim. Given that, it would be unfair to hold Hodo's silence against her. *See Hernandez*, 634 F.3d at 913.

### C. *Monell* Claim

Finally, Hodo asserts a *Monell* claim against the City, claiming that the CPD maintained a "policy or custom" of permitting officers to obtain fraudulent warrants. 436 U.S. at 694. The Court granted Defendants' motion to bifurcate the individual claims from the *Monell* claim and stayed discovery on the latter. *See* 5/18/21 Order. Hodo contends that the bifurcation and stay estop the City from moving for summary judgment on the *Monell* claim. She cites no case law in support of this proposition, and in any event, her *Monell* claim is predicated on her failed invalid warrant claim. This is fatal, because *Monell* liability requires the plaintiff to establish a predicate constitutional violation and a causal link between that violation and the alleged policy or custom. *See First Midwest Bank Guardian of Estate of LaPorta v. City of Chi.*, 988 F.3d 978, 986–87 (7th Cir. 2021) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997)), *cert. denied sub nom. First Midwest Bank v. City of Chi.*, 142 S. Ct. 389 (mem.) (2021). Here, the only constitutional claim that survives—the knock and announce claim—has no connection whatsoever to the alleged policy of sanctioning invalid warrants. Thus, summary judgment is also granted on the *Monell* claim.

IV.   <u>Conclusion</u>

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part.  The motion is denied with respect to Count II as to Mendez and Karczewski in their individual capacities.  In all other respects, the motion is granted.


**IT IS SO ORDERED.**                    **ENTERED: 3/23/22**

_____
**John Z. Lee**
**United States District Judge**